## MAISEN v. MAXEY et al.
### No. 6084.

Court of Civil Appeals of Texas. Amarillo.
Oct. 2, 1950.

Rehearing Denied Oct. 30, 1950.

James O. Cade, Lubbock, for appellant.

Klett, Bean, Evans & Justice and Vaughn E. Wilson, all of Lubbock, for appellees.

PITTS, Chief Justice.

On May 25, 1949, appellee, Carl E. Maxey, sued appellant, J. E. Maisen, seeking an injunction to restrain appellant from exercising certain acts of ownership over a previously dedicated park area made by appellant within the city limits of Lubbock inconsistent with the terms of the said dedication so made by appellant and in derogation of the rights of appellee Maxey as a property owner adjacent to the designated park area. Thereafter on June 17, 1949, upon a motion by appellant, the City of Lubbock was made a party defendant to the suit with appellant alleging a cause of action against the said City in the nature of trespass to try title and for damages against the said City. All parties have joined issues in the case and the issues here presented involve the dedication, title and use of that part of Tech Terrace Addition to the City of Lubbock marked and designated on a map as "Terraced Park Area", bounded by Jackson Avenue, 23rd Street, 25th Street and a driveway on the west side of the designated area.

The case was tried to a jury on April 10, 1950. At the close of the evidence the trial court peremptorily instructed the jury against appellant Maisen and for the appellees Maxey and the City of Lubbock. Thereafter on April 18, 1950, the trial court rendered judgment granting Maxey the injunctive relief sought, denying appellant Maisen any recovery against the City

of Lubbock and awarding the said City as a public authority the use of the said area in question as a park and a catch-basin for flood waters. Appellant perfected his appeal to this court and predicates the same upon eleven points presented.

The record reveals that on July 26, 1945, appellant obtained title to the lands now comprising Tech Terrace Addition to the City of Lubbock by a deed executed by Minnie Slaughter Veal, individually and as joint executrix with executor Wm. H. Flippen of the estate of George T. Veal, deceased, at which time there was located on the said lands a natural lake covering an area of approximately seventeen acres draining a watershed of several hundred acres. Soon thereafter appellant employed H. N. Roberts, an engineer, to prepare plans, specifications and construction drawings for platting Tech Terrace Addition. After such were prepared appellant and H. N. Roberts presented them for approval by the Lubbock City Engineer and City Planning Commission, who approved such plans and specifications after amendments were made thereto, and such were likewise thereafter approved by the Lubbock City Commission, thus making the Addition a part of the City and showing appellant as owner and developer. Thereafter on January 25, 1946, appellant and others associated with him prepared and executed a dedication deed covering Tech Terrace Addition with a plat or map of the same attached thereto and made a part thereof and filed the same for record in Lubbock County. The dedication deed contained restrictions as to improvements to be made thereon and others not material to the issues here presented. Both the plat approved by the Lubbock city officials and the one made a part of the dedication deed showed the surface lake area near the center of the Addition designated and marked thereon as "Terraced Park Area". The dedication deed contains the following provisions: " * * * the undersigned, as owners of said land, have plotted the same into blocks and lots and have likewise plotted on and across the same in said addition, avenues, streets, boulevards, drives and alleys, all according to the map of the same attached hereto and made a part hereof, and as such owners hereunder they desire to impress upon said land, the map and plat thereof, attached hereto and to dedicate as public ways the streets, avenues, boulevards, drives, and alleys as shown thereon, and desire to impress upon said land the name, Tech Terrace, an addition to the City of Lubbock, Lubbock County, Texas, and to impress thereon the names of the streets, avenues, drives, and boulevards as indicated on attached Plat."

The said deed further recites that appellant and others " * * * do hereby impress thereon the map and plat attached hereto, subdividing said land in accordance therewith, into blocks and lots as numbered thereon, by these presents so impress said map thereon and subdivide the same, and do hereby impress upon said land the name of Tech Terrace, an addition to the City of Lubbock, Lubbock County, Texas, and do hereby dedicate to the public for use as streets and public ways all drives, streets, boulevards, avenues, and alleys indicated on the map when, and so long as the same may be used as such publicways; and do by these presents dedicate and grant the easements indicated upon said map to the extent and as fully as is described by separate easement instrument hereinafter to be given and granted by the undersigned as owner of the land.

"By This Dedication, the undersigned irrevocably grant to the public the public ways shown upon said map."

The area designated and marked on the map as "Terraced Park Area" is definitely marked by fixed boundaries on the map as well as on the ground. On the ground it is completely surrounded by a concrete curb and paved boulevard 60 feet wide, constructed by appellant, adjacent to the outer rim of the said park area.

Appellant used miniature copies of a map made by his engineer Roberts in selling lots located in the Tech Terrace Addition which map shows parts of the park area set in shrubbery. Appellant testified that he intended originally to make a park area and that he had topsoil spread in the area and began development of such area by planting between 220 and 250 trees thereon and

311

kept them watered for a time and tried to keep the park area grounds clean and level. There is direct evidence by purchasers of lots to the effect that appellant represented the park area to be a dedicated park in selling the lots around it and that such representation helped induce the sales of such lots. During the latter part of 1945 and the spring and summer of 1946 appellant was improving the lake area or park area in accordance with the approved plans and specifications and was selling many lots about and near the said area in the Tech Terrace Addition for residential purposes. During development of the Addition and the park area many nice residences were built in that Addition and numerous other permits for such were secured. Among the lots sold by appellant was Lot 5 in Block 2 of the said Addition facing the park area and separated from it only by the paved boulevard adjacent to the said area. It was first sold by warranty deed executed by appellant to I. A. Stephens early in 1946. I. A. Stephens observed a map of Tech Terrace Addition in appellant's office before purchasing the lot. Stephens sold the lot without any improvements thereon by warranty deed on March 17, 1947, to appellee Carl E. Maxey who examined a map as well as the premises and surrounding conditions before purchasing the said lot. Maxey testified, in effect, that he bought the lot for the purpose of building a home on it, which he later built, and that the designation of the "Terraced Park Area" and the developments on the ground helped to induce him to buy the lot for such a purpose. The habendum clauses in the Stephens and Maxey deeds each contain the usual statements: "To Have And To Hold the above described premises, together with all and singular the rights and apurtenances thereto in anywise belonging * * *" etc.

Prior to appellant's purchase of the lands in question the part designated later as a park area was considered principally as a natural lake and the prior owners thereof, as well as appellant, cooperated with the officials of Lubbock County and the City of Lubbock in using the lake to help care for the natural drainage of the area.

Thereafter appellant improved it until it had the appearance of a park in the shape of a circular basin with a gentle slope from the rim to the bottom of the lake. Appellant's efforts converted it into a park area as well as a catch-basin in the bottom thereof with channels draining the flow of water into further outlets.

Appellee Maxey pleaded that he purchased his lot, relying upon the sufficient drainage basin system to protect his property and expecting a continuation of the development of the park area but appellant had recently begun a course of conduct affecting the area and that such conduct was inconsistent with the dedication of the property in question and in derogation of the rights of the said appellee. The said appellee offered undisputed evidence of probative force to the effect that appellant had hauled and caused to be hauled and piled in the area designated as "Terraced Park Area" enough dirt, caliche and debris to cause an overflow of water up and under his house and in his garage when it rained. Although appellant testified that he originally intended to make a park out of the area in question, he further testified that he now pleads that he intends to plat a portion of the area in question and sell it as lots. He further testified that he owned the area and he intended to plat it and sell it or sell lots out of it. He further testified that he had levelled a fill in the area in front of Maxey's house and across the paved boulevard with the intention of making it into lots.

Appellant denies dedicating the "Terraced Park Area" to the use of the public and further denies that the map attached to the dedication deed and made a part thereof marked any part of the area for park purposes. However, the said deed recites that appellant desired "to impress upon said land the map and plat" attached thereto and made a part thereof and the said map or plat has impressed thereon the words "Terraced Park Area". It is true that the deed of dedication does not mention "Park Area" but the said deed does dedicate to the use of the public such "public ways" and "easements" as are shown on the map. Under the authorities

hereafter cited appellee Maxey and other such purchasers of lots in Tech Terrace Addition had a legal and equitable right to rely upon the strongly implied representations, if they cannot be considered actual representations, made by the dedicator to the effect that "public ways" and "easements", including the park area, dedicated to the public would never be put to any use inconsistent with the use for which they were dedicated. Such a relationship became contractual as between the dedicator and the purchaser and is binding on both parties thereto but this contractual relationship alone will not inure to the benefit of the general public. Eidelbach v. Davis, Tex.Civ.App., 99 S.W.2d 1067. However, in the case at bar, the existing contractual relationship existing between the dedicator and the purchaser does not impair in any way the rights of the general public to use the dedicated "public ways" and "easements", including the park area, made by appellant. According to this and other authorities cited appellant cannot now consistently disregard the record he made and the physical improvements he placed on the grounds in developing the park area for public use while he was at the same time inducing people by reason of the record he made and the development of the grounds to buy lots in the Addition for reisdential purposes.

In the case of Oswald v. Grenet, 22 Tex. 94, the Supreme Court said concerning rights of the parties in such cases: " * * * in other words, the sale and conveyance of lots in the town, and according to its plan, imply a grant or covenant to the purchasers, that the streets and other public places, indicated as such upon the plan, shall be forever open to the use of the public, free from all claim or interference of the proprietor, inconsistent with such use."

The rule there stated has been consistently followed and the said case was cited with approval of the Supreme Court early this year in the case of Adams v. Rowles, 228 S.W.2d 849.

If appellant did not intend to dedicate the area in question as a public park, he should not have impressed the said area upon the map or plat as "Terraced Park Area", and then made it a part of his dedication deed and recited therein that such was so impressed therein and should not have further marked it accordingly upon the grounds. The word "terraced" usually means slope of the ground, arranged in a series of level steps or platforms, one above the other, for use or pleasure. The word "park" usually means area, tract, space, basin, enclosure or part of ground in or near a city or town used for recreation. The word "area" usually means tract, space, region or a broad part of land. The facts and circumstances clearly reveal from the record, including appellant's own testimony, that appellant, when he had his engineer lay out the land and make his map or plat, executed the dedication deed and put it of record, intended to change the old natural surface lake located near the center of the new Addition from an "eyesore" into an improved beautiful park area. By his own acts he has given the public, and particularly the property owners to whom he has sold lots within the Tech Terrace Addition, a vested right in the use of the park area which rights he cannot now revoke unless the public and such property owners agree to a revocation. The Supreme Court further said in the case of Oswald v. Grenet, supra, that: "The principle upon which the binding and irrevocable nature of a dedication rests, appears to be this: that when once a way, street, etc., has been laid out on the soil, or on a map, and property has been purchased in reference thereto, the resumption of the street, or way, by the proprietor, would be an act of bad faith, and a fraud upon any interests acquired upon the faith of its being left open. Hence, it operates as an estoppel in pais of the owner, from exclusive use of the property, or indeed any use, which is inconsistent with the public use, to which it has been dedicated."

In the case of Fall v. Thompson, 126 Tex. 326, 87 S.W.2d 712, 713, the Commission of Appeals said in a similar case: "If it be true that the map of Zang's Crystal Hill addition which was filed for record shows the existence of this parkway in the middle of Zang boulevard, and if it can be ascertained with reasonable certainty the

purpose for which this parkway was intended, and if it be true that plaintiff purchased her property within said addition in reliance upon said map, then she acquired by purchase as an incident to her property the right to have such parkway left open for the uses and purpose for which it was dedicated. In other words, she has a right to say that it shall not be diverted to any use inconsistent with the purpose for which the dedication was made. City of Corsicana v. Zorn, 97 Tex. 317, 323, 78 S.W. 924; Clement v. City of Paris, 107 Tex. 200, 175 S.W. 672."

In the case of Martinez v. City of Dallas, 102 Tex. 54, 113 S.W. 1167, the Supreme Court held that a dedicator's deeds of conveyance of lots in an Addition "must be taken as referring to the map of his addition, which he had shortly before caused to be recorded, and that this justified the further holding that it was not thereafter in his power to revoke the dedication * * *." The court there further held that: "* * * the plat recorded by Ervin of his addition to the city of Dallas showed on its face a legal dedication of the land in controversy for a public way, and justified the trial court in so instructing the jury."

Appellant here charges that there was no acceptance of his dedication by the City of Lubbock. The Supreme Court held in the case of City of Corsicana v. Zorn, 97 Tex. 317, 78 S.W. 924, that there is no necessity in such cases for an acceptance by the city since the rights vested in the purchasers of the different lots, and through them in the public, was irrevocable. The Court there further held that in the purchasing and paying for his lot, the purchaser purchased and paid for, as an appurtenance to his lot, every advantage, privilege and easement represented on the map attached to the deed of dedication since the deed to the purchaser of the lot conveyed all rights and appurtenances, just as was the case in the deed of conveyance from appellant in this case to Stephens and in the deed from Stephens to appellee Maxey.

Appellant contends that he rendered the area in question for taxes and paid taxes on it. However the court held in a very similar case, Sanborn v. City of Amarillo, 42 Tex.Civ.App. 115, 93 S.W. 473, that where there was a designation of a park on a plat of an addition to a city and a sale of lots made by reference to the plat, the fact that the one making the addition rendered the park property for taxes and paid taxes thereon did not interfere with the dedication. In that case the court further held that where a block on a plat of an addition to a city was marked "Ellwood Park", and the plat was filed in the deed records of the county, and lots were sold describing the property by lot and block number as shown by the plat, as was done in the case at bar, there was a dedication of a public park. The court there further held that the purchase of lots constituted a sufficient acceptance by the public, though there had been no formal acceptance by the city.

Under the record presented and in view of the authorities cited and others, it is our opinion that appellee Maxey was entitled to the injunctive relief granted and that the trial court was justified in denying appellant any recovery but awarding appellee the City of Lubbock, as a public authority, the right to use the "Terraced Park Area" as a water basin and for park purposes for the use of the general public.

In its judgment the trial court did not divest appellant of title to the area of land in question. It merely required appellant to observe and abide by the terms of his dedication deed and map or plat previously made and put of record, which action of the trial court we approve. Appellant and the City acted jointly in making the Addition a part of the City and in using the park area as a part of the drainage system to care for the original lake's natural watershed. In support of our position in these matters we cite the following additional authorities: Articles 974a and 6626, Vernon's Annotated Civil Statutes; Williams v. Flores, Tex.Civ.App., 295 S.W. 212; Gillean v. City of Frost, 25 Tex.Civ.App., 371, 61 S.W. 345; Texas & P. Ry. Co. v. Chandler, Tex.Civ.App., 20 S.W.2d 380; City of Houston v. Scanlan, 120 Tex. 264, 37 S.W.2d 718; Lewis v. City of Fort Worth, 126 Tex. 458, 89 S.W.2d 975; Oak Park Cemetery v. Donaldson, Tex.Civ App., 148 S.W.2d 994; 14 Tex.Jr. 714,

paragraph 24; 734, paragraph 39; 736, paragraph 40; 19 C.J. 935, paragraph 138; 28 C.J.S., Easements, § 44; 50 C.J. 865, paragraph 93. 30 Tex.Jur. 547, paragraph 302; 44 Tex.Jur. 159, paragraph 122; Mason v. Rockwall Co. Levee Improvement Dist., Tex.Civ.App., 17 S.W.2d 841; Johnson v. McMahon, 118 Tex. 633, 15 S.W.2d 1023; Matthews v. City of Fort Worth, Tex.Civ.App., 84 S.W.2d 803.

A careful examination of the record and briefs of the parties reveals no reversible error. Appellant's points to the contrary are all overruled and the judgment of the trial court is affirmed.