**COUNTY OF CALHOUN et al., Appellants,**

**v.**

**Willett WILSON et al., Appellees.**

**Willett WILSON et al., Appellants,**

**v.**

**COUNTY OF CALHOUN et al., Appellees.**

**Nos. 347, 366.**

Court of Civil Appeals of Texas.

Corpus Christi.

Feb. 29, 1968.

Rehearing Denied March 28, 1968.

Willett Wilson, Houston; Cullen, Mallette, Maddin, Edwards & Williams, Harry F. Maddin, Victoria, for appellants-cross-appellees.

William W. Day, Co. Atty., Port Lavaca, Guittard, Henderson, Jones & Lewis, Frank Guittard, Marion Lewis, Victoria, for appellees-cross-appellants.

## OPINION

GREEN, Chief Justice.

In the Fall of 1960, Calhoun County Surveyor Hodges made the following written report to his commissioners court:

"In regard to an area on the North shore of Chocolate Bay originally containing about 4 acres of land at the Bay shore terminus of a platted roadway, now known as Alcoa Drive, please be advised that the undersigned has made a careful examination of the Plat of the Port Lavaca Development Plat Records which bears the notation 'Subdivided and Drawn by Hill, Kelly and Thayer, Architects, Engineers and Surveyors, Sept. 1893.' I find that this Plat shows an area approximately 4 acres of land by scaling, on the North shore of Chocolate Bay at the Bay shore terminus of a platted roadway, now identified on most modern maps as Alcoa Drive. Said area is marked 'RESERVED' on the recorded Plat.

"Recent surveys show that erosion has claimed a large part of this area but there remains some one and one-half to two acres of land not covered by water of the original area 'RESERVED'. This area is surrounded by lands owned by Willett Wilson Estate and the roadway leading to the 'RESERVED' area is blocked by a fence.

/s/ Charles W. Hodges"

At its meeting on October 10, 1960, the Calhoun County Commissioners Court entered the following order on its minutes:

"That the County Attorney notify Mr. Willett Wilson that he has thirty (30) days in which to remove the fence from the road right-of-way which is now blocking access to the park area; and,

"That if the obstruction is not removed within the specified time the Court will proceed to remove the said obstruction."

Willett Wilson and his sister, Christine Wilson, hereinafter styled Wilson, or plaintiffs, filed this action against Calhoun County, Texas and the County Judge and County Commissioners thereof, hereinafter styled County or defendants, on November 4, 1960, to enjoin defendants from (1) opening a claimed dedicated roadway across their property, and (2) taking possession of an area shown on the maps of the original subdividers as a "Reservation" and claimed by the County to be a dedicated park. Plaintiffs contended in the trial court

that (1) the roadway was never legally dedicated; (2) that if it was legally dedicated, it has been continuously enclosed with a fence by the adjoining landowners (plaintiffs) for over 20 years, and the County has no remedy to open same as a road under the provisions of Art. 6703a, Vernon's Ann. Tex.Civ.Stats., unless and until it is established as a new road; and (3) that the so-called "reserved area" designated "Reservation" on the maps by the original subdividers was not a dedicated tract, and having been in the possession of plaintiffs under fence for more than forty years, County had no right to possession or use of it.

It was and is the contention of County (1) that the roadway and reserved area were a part of the Port Lavaca Development Company subdivision of the Samuel Shupe and Maximo Sanches Leagues as shown by the plats of record in the Calhoun County records; that the so-called "reserved area" and roadway in dispute are shown upon said plats; that the lands in said subdivision, including the property claimed by plaintiffs, have been conveyed by reference to said subdivision and plats, and that as a result, the dedication was established and made irrevocable; (2) that even if said roadway and/or "reserved area" were not dedicated to public use by reason of said plats and conveyances, there was an *implied* dedication thereof to public use by the owners of such property; and (3) there having been a valid dedication of said roadway and "reserved area" to public use, possession or use thereof by plaintiffs would not serve to defeat the rights of the public therein.

We show herewith a diagram which includes the land and claimed roadway in litigation:

The above diagram represents a *portion* of Defendants' Exhibit 8, introduced in evidence as a true copy of the plat of the Port Lavaca Development Company Subdivision of the Samuel Shupe and Maximo Sanches Leagues in Calhoun County, Texas as recorded in the deed records of the county. It contains the affidavit of the developers, dated Dec. 3, 1904, that Lots 1–33 inclusive are in the Sanches League, and Lots 34–68 inclusive are in the Shupe Survey; it states that "All roads represented on said Map except those marked 'Closed' are donated to the public." The plat contains the following certificate:

"Filed for Record Dec 7th 1904 at 10 o'clock A M. And duly recorded in Book T, pages 2 & 3 of Deed Records of my Office this 20th day of Dec 1904

J W S Holman.
Clerk."

The wide space between Blocks 33, 32, 31, and 30 in the Sanches League, and Blocks 34, 35, 36, and 44 in the Shupe Survey does not in fact represent an open space of that relative width between the two leagues, or between those blocks of land. The map of 1904 was larger than one page of the clerk's record book, and had been copied on two pages of the book with pen and ink. The division line of the two leagues fell in the space between the two pages, and as reproduced on said record this caused the space to appear as it does on the Exhibit 8 in evidence. However, a roadway is indicated within this space. The 1893 subdivision plat shows more clearly the existence of a road on the division line of the two leagues, with the word "Road" written in this space to the north of the area shown above.

The trial was to a jury, which returned into court its findings as follows:

(1) that plaintiffs had not held peaceable and adverse possession of the area involved for a period of ten consecutive years beginning after January 1, 1923, and prior to January 1, 1953;

(2) that plaintiffs have had the area claimed as a roadway enclosed with a fence for a continuous period of twenty years or more prior to November 4, 1960;

(3) the alleged road shown on the subdivision maps in evidence is reasonably necessary to reach the Reservation area shown on said maps, or other lands adjacent to such road;

(4) the general public has made no use of the alleged roadway from January 1, 1923, to November 4, 1960;

(5) the alleged roadway in question has not been obstructed by a fence continuously from January 1, 1923 until November 4, 1960;

(6) unanswered, due to negative answer to No. (5);

(7) that the land between parallel lines indicated on the maps of the subdivision and proceeding northwesterly from the area marked as "Reservation" was dedicated to the public use as a road;

(8) that the area in dispute marked "Reservation" on the maps of the subdivision was dedicated to public use.

After verdict, the plaintiffs filed a motion for judgment non obstante veredicto, and County filed its motion for judgment on the verdict. The trial court entered its judgment sustaining plaintiffs' motion in so far as it pertained to the "reserved" or "park" area, set aside the jury's answer to special issue No. 8, and granted plaintiffs a permanent injunction against defendants as to such area. The court denied plaintiffs' motion in all other respects, and granted County's motion in part by refusing the injunctive relief as to the roadway in issue.

Each party has filed a separate appeal in this Court from that portion of the trial court's judgment unfavorable to their respective contentions. The two appeals have been consolidated, and will be so disposed of.

## APPEAL OF DEFENDANTS COUNTY OF CALHOUN, ET AL (NO. 347)

Defendant County's first point of error is that the trial court erred in granting injunctive relief in so far as the "reserved area" is concerned in the absence of any proof that plaintiffs owned such reserved area.

The land referred to lies between the south line of Block 33 and the bay shore as shown on the plats of the Port Lavaca Development Company Subdivision in evidence. Plaintiffs owned no record title to this small tract. Although County makes the contention on this appeal that plaintiffs failed to establish title to the property on both sides of the disputed roadway in issue, shown as blocks 32, 33, 34, 35 and 36 on defendants' exhibit 8, the diagram above being a portion thereof, it appears to us from a thorough reading of the statement of facts that the case was tried on the theory that plaintiffs owned title to such blocks (not including the area marked "Reservation"). This appears true not only from the direct and cross examination of plaintiffs' witnesses wherein this land was constantly referred to as the Wilson property, but just as clear from the testimony of County Judge Hartzog and Commissioner Wedig and other defense witnesses.

■ The evidence supports the conclusion as a matter of law that the "reserved area" in litigation had been enclosed with lands of the plaintiffs adjoining such area continuously for over forty years; that the land was fenced on three sides and was bounded by the bay on the other side, and that such land, including the "reserved area" had been in plaintiffs' actual possession and used by plaintiffs and their tenants for grazing purposes. Regardless of whether such possession was sufficiently open and adverse to create a limitation title under the ten-year statute (and the jury found that it was not—issue No. 1) we are of the opinion that it constituted such actual prior possession as would create property rights in plaintiffs against a naked trespasser with no rights of possession. Land v. Turner, Tex.

Sup.Ct., 377 S.W.2d 181; Reiter v. Coastal States Gas Producing Co., Tex.Sup.Ct., 382 S.W.2d 243. It thus becomes necessary to determine whether County was acting as a naked trespasser without rights in its efforts to secure possession of the so-called "reserved area."

County's second, third and fourth points allege error in the action of the trial court in partially granting plaintiffs' motion for judgment n.o.v. and in setting aside the jury's finding that the reserve area had been dedicated to public use (issue 8) and in holding that there was not sufficient evidence to support the jury's affirmative answer to such special issue.

■ We agree with plaintiffs' contention concerning dedication to this limited extent, that the inclusion by the developers of the subdivision in the plats in 1893 and 1904 of the word "RESERVATION" on this area and the subsequent sale of blocks by reference to such plats did not in and of itself raise any presumption as a matter of law of any dedication of such tract to public use. City of Brownsville v. West, Tex.Civ.App., 149 S.W.2d 1034; Hollan v. State, Tex. Civ.App., 308 S.W.2d 122, wr. ref., n. r. e.; Hunter Company v. Fain, Tex.Civ.App., 281 S.W.2d 750, wr. ref., n. r. e. It will be noted that the developers did not state for what purpose the land was reserved; the words "park reserve for this addition", as in Shields v. Harris County, Tex.Civ. App., 248 S.W.2d 510, wr. ref., n. r. e., or "Terraced Park Area" as in Maisen v. Maxey, Tex.Civ.App., 233 S.W.2d 309, wr. ref., n. r. e., were not used.

■ The definition of "dedication" given by the trial court to the jury in connection with special issues Nos. 7 and 8 included the elements of an implied dedication. Common law dedications are subdivided into two classes, express and implied. O'Connor v. Gragg, 161 Tex. 273, 339 S.W. 2d 878, and authorities there cited. The rules of law applicable to implied dedications are set forth in some detail in Dunn v. Deussen, Tex.Civ.App., 268 S.W.2d 266, wr.

ref., n. r. e., cited with approval and quoted by the Supreme Court in O'Connor v. Gragg, supra. To establish a dedication of land for public use, it is essential that the owner should have intended to set it apart for the use of the public, but such intention need not be evidenced by a deed, and it is sufficient if it be shown by some clear and unequivocal act of declaration of the owner. Owens v. Hockett, 151 Tex. 503, 251 S.W.2d 957; Cockrell v. City of Dallas, Tex.Civ. App., 111 S.W. 977; Brown v. Kelley, Tex. Civ.App., 212 S.W.2d 834, cited with approval and quoted in Owens v. Hockett, supra.

As stated in O'Connor v. Gragg, supra,

" * * * The evidence brings the case squarely within the well settled rule as announced in Dunn v. Deussen, supra, that a presumption of acquiescence is raised when the origin of the user by the public and the ownership of the land at that time are shrouded in obscurity, and no evidence exists to show the intention of the owner in allowing the use. See Tex.Jur. 14–B, 367, Section 26; Oswald v. Grenet, 22 Tex. 94; Harger v. Cason, Tex.Civ.App., 223 S.W.2d 244; Dunn v. Deussen, supra."

With reference to the legal principles applicable in passing upon a judgment non obstante veredicto we quote the following from Leyva v. Pacheco, 163 Tex. 638, 358 S.W.2d 547–550:

"To sustain the action of the trial court in granting the motion for judgment notwithstanding the verdict it must be determined that there is no evidence on which the jury could have made the findings relied upon. In acting upon such motion all testimony must be considered in a light most favorable to the party against whom the motion is sought and every reasonable intendment deducible from the evidence is to be indulged in such party's favor. Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194."

We shall also be governed by the following statement of the Supreme Court in Shelton v. Belknap, 155 Tex. 37, 282 S.W.2d 682, 683:

"Following the familiar rule when judgment is rendered non obstante veredicto our statement of the evidence will comprehend only that which supports the jury's verdict."

See, also, Owens v. Hockett, supra, 251 S. W.2d p. 958.

Five witnesses testified for defendants to show the public use of the tract in controversy from forty to fifty-five years ago. Judge Carey Leggett, 78 years of age at the time of trial and a resident of the area for 61 years, testified that when he was a boy and a young man he and others frequently hunted on this tract, and that it was a public place. Defendant Howard Hartzog, present county judge of Calhoun County and lifelong resident there for over 60 years, testified that as a boy scout he frequently travelled the road leading to the reservation and hunted and fished on the area; that this tract, known then as Flounder Point, had always been considered public property and a park; that a gun club used the property, fed people, and shot trap on the end of Flounder Point; that it was where boats were frequently docked; and that this was where the public had barbecues and picnics, and people came in wagons and buggies for gatherings. Leonard Fisher, former sheriff and ex-commissioner, gave testimony of his experiences with this tract over fifty years ago, and stated that this property was recognized then by the public as a park. Like testimony was given by other witnesses.

■ A number of deeds dated from 1904 and earlier to 1922 in the chain of title of the property claimed by plaintiffs were admitted in evidence. In the conveyances the grantors carefully excluded what in said deeds was referred to as "the Reservation" from the conveyance, and it does not appear that title to such four-acre block was ever transferred out of the original subdividers. A dedication may be shown by circum-

stance. Owens v. Hockett, supra. The fact that for over 60 years the record owners of this small tract have not sought to exercise rights of ownership may be considered as a circumstance along with the other facts in evidence of the intent to dedicate this property to public use. Also, the fact that the old marked road on the plats leads to this four-acre tract may shed some light on the question of dedication.

■ We are of the opinion, and so hold, that a *fact issue* of dedication of the "reserved area" to public use was raised by the evidence, and that the answer of the jury to special issue No. 8 was supported by sufficient factual evidence.

■■ Said area having been dedicated to public use, it remains subject to such use unless abandoned. While plaintiffs allege that said area had been abandoned, they did not request any special issue on that matter. The party asserting abandonment must show (1) acts of relinquishment and (2) the intention to abandon and the failure of County to maintain a public area does not establish abandonment as a matter of law. Adams v. Rowles, 149 Tex. 52, 228 S.W.2d 849; Maples v. Henderson County, Tex. Civ.App., 259 S.W.2d 264, wr. ref., n. r. e. Mere nonuser of an easement will not extinguish it. Adams v. Rowles, supra, 228 S. W.2d p. 852.

■ Once said "reserved area" was dedicated, then regardless of the type of possession and claim that the adjoining owners may have had, the public rights could not be defeated by any statute of limitations. Art. 5517, V.A.T.S.

Art. 6703a, V.A.T.S. is not applicable, since it is limited to roads.

As a consequence of what we have stated above, we hold that the trial court erred in granting the injunction against County with reference to the tract marked on the plats "Reservation". The judgment of the court is reversed in so far as it grants such injunctive relief to plaintiffs; and it is here

rendered so that plaintiffs' prayer for injunction against County as to this area is denied. Jackson v. Ewton, Tex.Sup.Ct., 411 S.W.2d 715.

In view of our above holding, County's last two points of error become immaterial, and we shall forego discussion of them.

## APPEAL OF PLAINTIFFS (NO. 366)

The trial court in its judgment expressly found that the area referred to in plaintiffs' pleadings as a "purported road" and in defendants' pleadings as a "public road" was dedicated to the public use, that there had been no abandonment of this public use, and that plaintiffs have not acquired by limitation or by the provisions of Article 6703a, V.A.T.S. any rights or title adverse to the public with respect to such area, and that defendants are entitled to possession of such area for public uses and purposes. The court further specifically set out the bounds of such road area as "A strip of land forty (40) feet in width extending from what is now known as the Alcoa Drive to the bay shore of Chocolate and Lavaca Bays, and extending twenty (20) feet on each side of the common boundary line of the Maximo Sanchez and Samuel Shupe original grants in Calhoun County, Texas."

The court on the basis of the verdict and the above findings set aside the temporary injunction it had theretofore issued enjoining county from taking possession of said road area, and denied plaintiffs' suit for injunctive relief against county as to such road area. It is from this portion of the judgment that plaintiffs have appealed.

■ Plaintiffs by their first and second points assign as error the court's finding that plaintiffs did not acquire by adverse possession or by limitation or by the provisions of Article 6703a, V.A.T.S., any rights or title adverse to the public with respect to the road area. In this connection plaintiffs do not assign by any point of error any question of factual or legal sufficiency of evidence to support the jury's finding in

answer to special issue No. 7 that the area indicated on the maps of the subdivision and proceeding northwesterly from the "Reservation" area had been dedicated to the public use as a road.

Article 6703a, adopted in 1955, reads as follows:

"Whenever the use of a county road has become so infrequent that the adjoining land owner or owners have enclosed said road with a fence and said road has been continuously under fence for a period of twenty (20) years or more, the public shall have no further easement or right to use said road unless and until said road is re-established in the same manner as required for the establishment of a new road; this Act shall not apply to roads to a Cemetery or Cemeteries; provided however, that this Act shall not apply to access roads reasonably necessary to reach adjoining land. Added Acts 1955, 54th Leg., p. 1625, ch. 525, § 1."

The jury found (Issue 2, supra) that the plaintiffs have had the area claimed as a roadway enclosed with a fence for a continuous period of 20 years or more prior to the filing of this suit. However, the jury also answered (No. 8) that the "Reservation Area" was dedicated to public use, which finding we have upheld in the first section of this opinion, and (3) that the road here in dispute is reasonably necessary to reach the Reservation area shown on the map, or other lands adjacent to such road. The so-called Reservation area, discussed earlier in this opinion, is the only land adjoining the road in which the public is shown to have any interest or rights. Furthermore, plaintiffs do not claim or hold record title to this "Reservation" area; their only claim is by virtue of their prior possession, as heretofore discussed.

Hence, it is clear that the proviso at the end of the statute governs this situation, and that Article 6703a is not applicable.

As to plaintiffs' contention of adverse possession, limitation, and in their third point of error abandonment, the same legal principles apply as we have heretofore discussed in the first section of this opinion. All of said contentions are overruled.

Plaintiffs' fourth point of error reads:

"The Court erred in overruling Plaintiffs' written objections to the Court's Charge and Special Issues therein contained. (Germane to Ground No. III, No. IV and No. V, Amended Motion for New Trial.)

FIFTH POINT: The Court erred in rendering judgment based on the jury's answer to Special Issue No. 7 because it was a submission of question of law.

### "SPECIAL ISSUE NO. 7

"Do you find from a preponderance of the evidence that the land between parallel lines indicated on the maps recorded in Volume Z, Page 57, and Volume T, Pages 2 and 3, of the Deed Records of Calhoun County, Texas, and proceeding northwesterly from the area marked on such maps as 'Reservation', was dedicated to public use as a road?

Answer 'Yes' or 'No'.

We the jury answer Yes.

(Germane to Ground No. III, No. IV and No. V, Amended Motion for New Trial.)"

Assignment No. III in the amended motion for new trial reads exactly as their fourth point. The fifth point is copied verbatim from their fourth assignment. The fifth ground of the amended motion complains of certain findings of the trial court.

Plaintiffs' objections to the court's charge were rather lengthy, and occupy five full pages of the transcript. Clearly, the fourth point and the assignments in the amended motion for new trial are insufficient to meet the requirements of Rules 321, 322, 374, and 418, Texas Rules of Civil Procedure, and need not be considered. Garza v. Alviar, Tex.Sup.Ct., 395 S.W.2d 821; Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887, 891;

Isenhower v. Bell, Tex.Sup.Ct., 365 S.W.2d 354; Big Three Welding Equipment Company v. Roberts, Tex.Civ.App., 399 S.W.2d 912, 918, wr. ref. n. r. e.; Holzapfel v. Brueggman, Tex.Civ.App., 404 S.W.2d 916, 919, wr. ref. n. r. e.

▆ These two points are argued together by plaintiffs, and their only contention of error in their statement and argument is that issue No. 7 wrongfully submits a question of law to the jury. Plaintiffs in their statement and argument do not consider or even mention the definition of the term "dedication" given in connection with issues 7 and 8, nor do they contend by any point of error that said definition was erroneous. The evidence raised an issue of fact as to whether or not the property in controversy had been dedicated to public use as a road. We hold that issue No. 7, when considered along with the definition of dedication included in the charge, submitted an issue of fact. The fourth point is not sufficiently definite to be considered, but in view of the joint statement and argument with fifth point, we overrule both.

▆ In their third point, plaintiffs assign as error the portion of the judgment wherein the trial court defined the dedicated roadway as being forty feet in width, i.e., twenty feet on each side of the common boundary line of the Sanches and Shupe grants, and extending from what is now known as Alcoa Drive to the bay. They contend that there was no pleading or proof of the width or exact location of the road, or that the road if dedicated had been accepted by Calhoun County.

As to the charge that the designation of the roadway as made in the judgment was not authorized by the pleadings, defendants plead that the roadway in dispute was a part of the Port Lavaca Development Company Subdivision of the Samuel Shupe and Maximo Sanches Leagues in Calhoun County, Texas, that the roadway is shown on said plats; that the conveyances through which plaintiffs claim title are based on said plats,

as well as all conveyances of other land in the subdivision; that the roadway as shown on said plat was dedicated to public use, and that said roadway gave the public access to the reserved area, and to the bay shore.

Defendants relied upon the plats as well as oral testimony to establish dedication. The area claimed is the same as the roadway evidenced on the plats. There was considerable documentary evidence showing the location of the various tracts in this subdivision as platted. There was testimony by defendants' witnesses that a roadway now known as Alcoa Drive, of which this disputed road would be an extension from the northwest corner of Block 32 to the bay and "reserved area," was originally forty feet in width. A Highway Department map showing the widening of Alcoa Drive in 1962 was introduced. This map shows that the common boundary line of the Shupe and Sanches surveys is the center line of the road. Both plats in evidence show the common boundary line of the Shupe and Sanches grants to be the center line of the disputed roadway. The jury, in answer to special issue No. 7, found that the area shown on the recorded plats between the parallel lines was dedicated to the public use as a road. As heretofore stated, the plaintiffs do not by any point of error question the sufficiency of the evidence to support such jury finding. We therefore conclude that the trial court did not err in fixing the extent and boundaries of the dedicated roadway.

▆ Plaintiffs assert that there being no acceptance by or order of the County Commissioners Court authorizing the claimed subdivision or dedication, the maps or plats on which defendants depend should not have been recorded, and are without any evidentiary value, relying on Art. 6626, V. A.T.S. As held in Trawalter v. Schaefer, 142 Tex. 521, 179 S.W.2d 765, the portion of Article 6626 requiring plats of subdivision of real property to be approved by the Commissioners Court before they should be filed and recorded was added in 1931, and before that date there was no such requirement.

These plats relied on by defendant, being their exhibits 7 and 8, were prepared and filed, the first in 1893, and the second in 1904. In this instance the dedication made by the subdividers inured to the benefit of all owners of the subdivision, and there was no necessity for an acceptance, as the rights vested in the purchasers of the blocks, and through them to the public, irrevocably. Maisen v. Maxey, Tex.Civ.App., 233 S.W.2d 309, wr. ref. n. r. e.

We have carefully considered all of plaintiffs' points of error, and find no reversible error as to any of them. The judgment of the trial court is reversed and rendered as to the portion appealed from by County-defendants, and it is affirmed as to that portion appealed from by Wilson-plaintiffs. All costs of the trial court and of the appeal are assessed against plaintiffs.