## DUNN v. DEUSSEN.

No. 15509.

Court of Civil Appeals of Texas.

Fort Worth.

April 30, 1954.

Rehearing Denied May 28, 1954.

Gerald E. Stockard, Denton, for appellant.

Coleman & Whitten, Denton, for appellee.

RENFRO, Justice.

The appellee Alexander Deussen sued for a mandatory injunction to require appellant C. Hobson Dunn to remove a gate from an alleged public road. In his petition he alleged he was entitled to the relief sought, because (a) he had acquired a private easement by prescription; (b) the public had acquired a public easement by prescription; (c) the road had been dedicated to the public—by acts of appellant and his predecessors in title and by the acceptance of such dedication by the public; (d) appellee was entitled to a way of necessity.

The jury found in answer to special issues that:

(1) There is a road running the entire distance from the gate involved to the appellee's property; (1-A) said road had existed for a period of ten years immediately prior to the erection of the gate; (2) appellee, or his tenants, and his predecessors in title used the road continuously and uninterrupted for ten or more years immediately preceding erection of the gate; (3) such use for such period of time was open, visible and notorious, and (4) was adverse and hostile to appellant and those under whom he claims; (5) such use was under a claim of right; (6) appellee, or his tenants, and those under whom he holds title claimed the right to use the road to the exclusion of the rights of appellant and those under whom claims, inconsistent with the use of same by appellant for ten years or more before erection of the gate; (8) the road was used and traveled by the public generally continuously and uninterrupted for ten years or more immediately before erection of the fence; (9) such use was open, visible and notorious, and (10) hostile to appellant and those under whom he claims title; (11) such use and travel was under a claim of right, and (12) was with knowledge of appellant and those under whom he claims and without objection by them; (13) the road in question was dedicated as a public road by the owners of the surrounding lands prior to the purchase of such lands by appellant.

Based on the verdict the court entered judgment finding the road to be a public road; that appellee and his predecessors in title had acquired an easement and the right to use said road as a public road without obstruction; that the road was dedicated as a public road by the former owners of the respective tracts of land through which said road traveled and same was open and visible as a public road; and that the general public acquired such road by prescription for more than ten years prior to the purchase thereof by appellant. Injunction was granted ordering removal of the gate, and appellant was enjoined permanently from obstructing said road.

Appellant, by his first four points of error, contends the court should have instructed a verdict for him because there is no evidence to support a finding of dedication of land for a public road; no evidence to support findings that the road had been used adversely and hostile to appellant and his predecessors; no evidence to support issues 10 and 11 on which court based judgment that public road was established by prescription; and no evidence to support issues 8 and 9.

The evidence must be viewed in the light most favorable to the verdict of the jury, and the judgment of the trial court must be sustained if there is evidence to support any of appellee's theories.

It is impracticable, if not impossible, to set out all the pertinent evidence contained in the 731 pages of the statement of facts. In substance, however, the evidence favorable to the jury verdict is as follows: prior to the time appellant acquired any land in the area involved, the road in question entered what is now the Dunn ranch at the northeast corner of the Cook tract and the southeast corner of the Dalton tract; it continued west along the north boundary of the Cook tract and south boundary of the Dalton tract and the south boundary of the Langley and Harris tracts to an offset corner in the Harris tract where it turned south along the west boundary of the Cook tract and the east line of the Harris tract

and thence on to appellee's tract. Prior to the purchase by appellant, the Dalton, Langley, Harris and Cook tracts had each belonged to different parties. Appellee acquired his farm in three different parcels from 1939 to 1943. Appellant acquired the Harris tract in 1943; the Cook tract in 1948; the Langley tract in 1949; and the Dalton tract sometime after the gate was erected. The gate was erected by appellant in 1949.

One witness has been familiar with the road since 1908 or 1909. At that time it was fenced all the way on both sides from appellee's place past the point where appellant has erected the gate and on to a connecting road to Ponder, Denton and Fort Worth. Throughout the forty-four years he has known the road it has been traveled by the general public from appellee's farm all the way out. The county has graded and "kept it up" for a long period of time. Other witnesses testified to familiarity with the road for periods as long as thirty years. There was always a fence on the north side of the road. At times the fence along the Cook side would be down a part of the way, but no adjacent owner ever plowed or in any other way attempted to use the roadway for any purpose other than a road. The south fence had been restored in full before appellant bought any of the tracts and he traveled down the road between the fences before he bought any of the various tracts. The road is the only practical road for appellee to travel to get to Ponder or anywhere else and, of course, the only way for any part of the public having business with appellee or his tenants, or visitors to tenants, to get to the farm. The road has the reputation in the community of being a public road. The public, including the school bus, still uses it. The witness Harrison, who formerly lived on the Cook place, testified the road had been open and visible to his knowledge since 1920; that a part of the fence along the Cook tract had fallen into disrepair, but one Clack, who followed him on the Cook place, restored the fence on the old fence line; that at the time appellant bought the Cook tract the road was fenced

its entire distance on both sides; that the road was traveled "a heap."

Another witness testified "it was just a plain old road—there was a fence on each side of it—it was just like all the other roads." He had known the road since 1922. The public used it and there were no gates or obstruction. It served the various farms now included in the Dunn ranch, as well as appellee and his predecessors.

A witness who had lived on the Harris place testified the road was the only road to appellee's place; the public used it, and he kept up the fence on his side as long as he lived there—it was an open road. It also appears from the evidence that it had always been open to the public. No one had to ask permission to use it. Abutting property owners had gates in their fences to give them access to the road. No owner of abutting land, prior to appellant, placed any obstacles or obstruction in the road, or made any contention it was not a public road.

Appellee, after appellant became the owner of the various tracts, graded a part of the road and hired appellant to spread gravel over it. There is evidence that the county worked the road both before and after appellant purchased the land.

The Commissioners Court has never ordered the road closed; on the contrary, said Court passed an order attempting to force appellant to keep the road open.

Appellant admitted that he understood from people in the community that the road had been there for forty or fifty years, but, he added, he understood that "it hadn't been worked very often." He admitted that the road was fenced all the way to appellee's farm when he bought the Cook tract.

█ To establish a dedication of land for a public road, it is essential that the owner should have intended to set apart the land for the use of the public, but such intention need not be evidenced by a deed, and it is sufficient if it is shown by some clear and unequivocal act or declaration of the owner.

Cockrell v. City of Dallas, Tex.Civ.App., 111 S.W. 977.

It is argued by appellant that in addition to showing a dedication, the proof must go further and show that the dedicators had title to the property at the time it was dedicated, citing Chenowth Bros. v. Magnolia Petroleum Co., Tex.Civ.App., 129 S.W.2d 446, and other cases.

In a case of this kind, where origin of the user by the public, and the ownership of the land at the time of such origin, are shrouded in obscurity, and no proof can be adduced to show the intention of the owner in allowing the use, the law raises a presumption that the requisite intention and acts disclosing it were present. 14 Tex. Jur., p. 707, sec. 18.

A setting apart, or dedication to a public use, to be effectual, need not be by a deed; nor need it be evidenced by the use of its having been continued for any particular time; it is enough, that there has been some clear, unequivocal act, or declaration of the proprietor, evidencing an intention to set it apart for a public use, and that others have acted in reference to, and upon faith of, such manifestation of intention. Oswald v. Grenet, 22 Tex. 94.

Official adoption, or even official recognition, is not necessary to the establishment of a nonstatutory highway. Dedication may be by overt act of the owner signifying his intention, the dedication being accepted by the public. But even without any overt act on the part of the owner, there may be such use by the public under such circumstances as will support an inference that the owner dedicated his land to such use. 21 Tex.Jur., p. 540, sec. 15.

The jury may be entitled to infer the fact of an intention to dedicate from long continued use by the public and the apparent acquiescence of the owner.

Generally, whether a public right of way has been acquired by dedication or by prescription is a question of fact. Money v. Aiken, Tex.Civ.App., 256 S.W. 641.

In Owens v. Hockett, 151 Tex. 503, 251 S.W.2d 957, 958, the Supreme Court said: "Our courts recognize the doctrine that a dedication of land to public use need not be shown by deed, nor by public use for any particular length of time. It is sufficient if the record shows unequivocal acts or declarations of the landowner, dedicating same to public use, and where others act on the faith of such dedication, the landowner will be estopped to deny the dedication, or to make any future use of the property inconsistent with any purpose for which the land was dedicated. Common-law dedications, such as the one here involved, are subdivided into two classes, express and implied. 'In both it is necessary that there should be an appropriation of land by the owner to public use, in the one case by some express manifestation of his purpose to devote the land to the public use, in the other by some act or course of conduct from which the law will imply such an intent.' Elliott, Roads and Streets (2d Ed.) p. 121; 26 C.J. S., Dedication, § 13, p. 65; Oswald v. Grenet, 22 Tex. 94; Wolf v. Brass, 72 Tex. 133, 12 S.W. 159; Evans v. Scott, 37 Tex.Civ. App. 373, 83 S.W. 874; Tribble v. Dallas Ry. & Terminal Co., Tex.Civ.App., 13 S.W. 2d 933, writ refused." In the Owens case the Supreme Court quoted with approval from Brown v. Kelley, Tex.Civ.App., 212 S.W.2d 834, by this court: " 'However, the theory of implied dedication carries with it the idea that the owner consented to the use of his land as highway to the extent that the court will hold that he dedicated it to public use, whether by express words, overt acts, or even by such inaction on the part of the owner as would justify a conclusion that he intended to dedicate his land to public use.' "

A dedication may be shown by circumstances. Owens v. Hockett, supra.

After a careful study of the record, we have concluded that the evidence supports the jury verdict and judgment of the court that the road in question was a dedi-

cated public road. The appellant's points of error are overruled.

Other points of error, based on objections to the court's charge, and to rulings on evidence, are briefed by appellant. We have concluded that none of said points present reversible error, and they are overruled.

The judgment of the trial court is affirmed.