CON J. O'CONNOR ET AL v. W. A. GRAGG.

No. A-7415. Decided October 19, 1960.
Rehearing Overruled November 30, 1960.
(339 S.W. 2d Series 878)

274

*L. H. Welch* and *Robert E. Bowers,* both of Breckenridge, and *Graves, Dougherty & Gee,* and *Ireland Graves,* of Austin, for petitioners.

The Court of Civil Appeals erred in failing to reverse the judgment of the trial court which declared that the roadway in

controversy is a public roadway by prescriptive right. Bain v. Parker, 143 Texas 57, 182 S.W. 2d 397; Othen v. Rosier, 148 Texas 485, 226 S.W. 2d 622; Hollingsworth v. Williamson, 300 S.W. 2d 194, error refused, n.r.e.

*Jennings & Montgomery* and *Frank Jennings,* of Graham, for respondent.

MR. JUSTICE SMITH delivered the opinion of the Court.

On June 3, 1957, respondent instituted this suit alleging that he was the owner of approximately 1280 acres of land lying south of 560 acres owned by petitioners. On July 1, 1957, respondent filed his first amended original petition alleging (1) that he had, by necessity, acquired an easement over and across O'Connor's land; (2) that he had acquired a private easement by prescription.

On July 1, 1957, the trial court granted a temporary injunction restraining O'Connor and his co-defendant, McConnell, from "interfering with the ingress and egress of W. A. Gragg, his family, guest[s] and employees to and from his property located in northeast Stephens County, Texas, the same being the A. E. Rickels Survey, Abstract No. 1945 and other land owned by W. A. Gragg immediately adjacent to the above named survey, by acts which tend to forbid or make impossible the use of the road leading off the Ivan-Graham-Farm-to-Market road traversing Con J. O'Connor's land which lies between the said farm-to-market road and A. Rickles Survey * * * ."

On August 22, 1957, plaintiff filed his second amended original petition alleging, in addition to the allegations in previous pleadings, an alternative plea to the effect that the general public had acquired an easement by prescription over O'Connor's land.

On May 20, 1958, and during the progress of the trial, respondent filed a trial amendment alleging that O'Connor's predecessors in title dedicated the roadway across the land "* * * to the public use as a public roadway, and that the public accepted such dedication and did in fact use such roadway as a public roadway, such public use has continued unabated through the years down to and including the present time. Plaintiff has at all times material to this suit relied upon said dedication and is now solely dependent upon the continued use of said roadway as a means of ingress and egress to and from his and his wife's

land. Defendant is therefore estopped to deny the dedication of said roadway or to deny plaintiff the use thereof."

The theory that Gragg was entitled to a way of necessity was apparently abandoned, and no issue thereon was submitted to the jury. Based upon the jury answers to the issues which were submitted, the trial court on June 16, 1958, rendered judgment in favor of Gragg. The judgment decreed that the strip of land twenty feet wide described in Gragg's petition as being a part of O'Connor's land was a public roadway, both by dedication as such and by prescriptive right. The court also perpetuated the temporary injunction enjoining the petitioners from obstructing the roadway or interfering with its use by "plaintiff Gragg, his heirs and assigns, the members of his family, his agents, servants, employees, invitees and guests as a means of ingress and egress to and from plaintiff's above described land."

It should be noted that the temporary injunction which was made permanent by the judgment was granted before the filing of the trial amendment.

The Court of Civil Appeals has affirmed the judgment of the trial court which declared the existence of a *public* roadway by *dedication* and by *prescriptive right,* although the opinion of the court expressly states that in view of its holding that Gragg had acquired an easement by dedication, "We do not find it necessary to pass upon appellants' [O'Connor et al.] other points complaining of the jury findings, and of that portion of the judgment decreeing the right of way in question to be a public road by prescription." [Emphasis added] 324 S.W. 2d 294. Thus, we have a situation where the opinion of the Court of Civil Appeals deals altogether with the dedication issue, yet that part of the judgment of the trial court is affirmed wherein it was adjudged and decreed that Gragg and wife have, by *prescriptive right,* an easement over the described roadway as a means of ingress and egress to and from their described surveys.

We have concluded to sustain petitioners' points attacking the judgment of the Court of Civil Appeals affirming the judgment of the trial court wherein it was adjudged and decreed that the roadway in controversy is a public roadway by prescriptive right and that the Graggs and the public have a private easement and public easement, by prescription, respectively, over and across the roadway described in the judgment, as a means of ingress and egress to and from the Gragg land. There is no

evidence in the record to the effect that the petitioners had no right to the full enjoyment of the roadway along with others. In fact, all the evidence shows that O'Connor and his predecessors in title used the road for the same purpose as the Graggs, which was to get to the paved public road north of all the land involved. There is no evidence which even tends to show a right, or a claim of right, of either the Graggs or the public to use the roadway to the exclusion of petitioners' right to use the roadway involved.

It is well settled that a public right of way by prescription can be established only by showing an uninterrupted use by the public under an adverse claim of right. See Ladies Benevolent Society of Beaumont v. Magnolia Cemetery Company, Texas Comm. App., 288 S.W. 812 (1926). The permissive use of a roadway over the land of another contemporaneously with the owner's use of the same roadway is not adverse. The use of the roadway under the circumstances reflected by this record cannot ripen into a prescriptive right. In order for there to be an acquisition of a prescriptive right, an adverse use of the easement must be shown. See Othen v. Rosier, 148 Texas 485, 226 S.W. 2d 622, 626, and cases therein cited. The rule controlling here was well stated by this court in Othen v. Rosier, supra. The court said:

"An important essential in the acquisition of a prescriptive right is an adverse use of the easement. 'Generally, the hostile and adverse character of the user necessary to establish an easement by prescription is the same as that which is necessary to establish title by adverse possession. If the enjoyment is consistent with the right of the owner of the tenement, it confers no right in opposition to such ownership.' 17 Am. Jur., Easements, Sec. 63, p. 974, citing cases from 22 jurisdictions, among which are Weber v. Chaney, Texas Civ. App., 5 S.W. 2d 213, er. ref., and Callan v. Walters, Texas Civ. App., 190 S.W. 829. Therefore, the same authority declares in Sec. 67, at page 978, 'The rule is well settled that use by express or implied permission or license, no matter how long continued, cannot ripen into an easement by prescription, since user as of right, as distinguished from permissive user, is lacking,' citing, among other cases, Klein v. Gehrung, 25 Texas Supp., 232, 78 Am. Dec. 565."

It follows that the judgment making perpetual the temporary injunction cannot stand on the theory that respondent or the public had acquired a private or public easement by prescription.

■ However, the judgment of the trial court should not be reversed if there is evidence to support the finding of the jury on the issue of dedication. The evidence on that issue, viewed in the light most favorable to the respondent and discarding all adverse evidence, leads us to conclude and hold that a roadway across O'Connor's "Upham and Gann" tracts was impliedly dedicated as a public road by O'Connor's predecessors in title prior to the acquisition of such land by O'Connor, and that at all pertinent times the public road thus dedicated has been situated in substantially the same location as the roadway in use at the time of the trial. The questions of dedication and location of the roadway were submitted to the jury and answers favorable to Gragg were returned and received by the court. The trial court in its charge defined "dedicated" to mean "* * * devoted or appropriated to a public use. Land may be appropriated to a public use if the landowners, by unequivocal acts or conduct, manifest a consent to such use and the public has acted in reference to and upon the faith of such acts."

The evidence shows that the roadway in question has existed for more than 68 years; that it has been a well-defined and well-traveled road. Several witnesses testified that they had been familiar with the road for many years. The record shows that Gann and Upham, the original owners of the surveys bearing their respective names, are deceased. None of the witnesses were able to state the exact origin of the user of the roadway by the public nor the ownership of such land at the time of suc horigin. The record does show, however, as stated in the Court of Civil Appeals' opinion, that "the roadway in question begins at a point on a paved road running along the north line of the Upham Survey, which is a part of appellants' lands, and proceeds in a generally southern direction through appellant's Upham Survey, then south through another tract of land belonging to appellant O'Connor designated as the J. Poitevent No. 2 Survey and continues in a southerly direction into the Rickles Survey which belongs to appellee, W. A. Gragg. The evidence shows that this roadway has existed for more than 68 years; that previously there was another road east of the road in question leading to the paved road on the north serving substantially the same territory, but it is now covered by the Possum Kingdom Lake. Walter Rickles testified that he was 75 years of age and was born and reared on the Rickles Survey. He testified that he first remembers traveling the road in question in 1890; that he has recently traveled over the roadway and found that it still exists in substantially the same location as it was when he first knew it in 1890. He testified that there were a

few places where the present road deviates from the old road, but that it follows substantially the same route as the old road. He testified that the crossing of Veal Creek as it exists today is the same as it was when he first crossed it. He testified that he, his parents, and others who then lived in the community used the road as a public road; that they believed and asserted that they had the right to do so; that he never heard of anyone asking permission to use the road and that no person ever objected or tried to stop them. He testified that the present road might be a little better than it was in the old days, but that it was not much better because the people who lived in the community all worked on the road together helping to keep it passable from one end to the other. Numerous witnesses testified that the road has been a well defined and traveled road for many, many years and used by the community generally; that it is now in substantially the same position as the first time they saw it, and that the users never sought permission but used the road under a claim of right as a public road. The evidence shows that for many years the road served a public school, a cemetery and the inhabitants of Cedar Creek community, and that the public generally, who had cause to travel in that area, used the road. Appellant O'Connor, himself, who owns other land in the area, used the road long before he acquired title to the land which it crosses and acquired such title knowing of the existence of the road and of its use by the public generally as well as by appellee W. A. Cragg."

Petitioners contend that the evidence in the case including that herein quoted, amounts to no evidence supporting a finding of facts essential to dedication. Although, recognizing the doctrine declared in Dunn v. Deussen, Texas Civ. App., 268 S.W. 2d 266, wr. ref. n.r.e., the argument is made that the circumstances and the evidence do not bring the case within that rule. We cannot agree. The evidence brings the case squarely within the well settled rule as announced in Dunn v. Deussen, supra, that a presumption of acquiescence is raised when the origin of the user by the public and the ownership of the land at that time are shrouded in obscurity, and no evidence exists to show the intention of the owner in allowing the use. See Texas Jur. 14-B, 367, Section 26; Oswald v. Grenet, 22 Texas 94; Harger v. Cason, Texas Civ. App., 223 S.W. 2d 244; Dunn v. Deussen, supra.

■ In the case of Owens v. Hockett, 151 Texas 503, 251 S.W. 2d 957, 958, this court quoted with approval language in the case of Abbott v. Mills, 3 Vt. 521, 527, 23 Am. Dec. 222, which

we think is equally applicable here. In that case the court said: "* * * the act of throwing open the property to the public use, without any other formality, is sufficient to establish the fact of a dedication to the public; and if individuals, in consequence of this act, become interested to have it continue so, * * * the owner cannot resume it."

Common law dedications, such as the one here involved, are subdivided into two classes, express and implied. This dedication falls in the latter class. The unequivocal acts and conduct of the petitioner, O'Connor, and his predecessors in title, show an implied intention to appropriate the roadway to public use. "* * * If the open and known acts are of such a character as to induce the belief that the owner intended to dedicate the way to public use, and the public and individuals act upon such conduct, proceed as if there had been in fact a dedication, and acquire rights which would be lost if the owner were allowed to reclaim the land, then the law will not permit him to assert that there was no intent to dedicate * * * ." Elliott, Roads and Streets (2d Ed.), Sec. 124, p. 121.

Petitioners cite such cases as City of Houston v. Scanlan, 120 Texas 264, 37 S.W. 2d 718; Worthington v. Wade, 82 Texas 26, 17 S.W. 520, and Gulf C. & S.F. Ry. Co. v. Montgomery, 85 Texas 64, 67, 19 S.W. 1015, in support of their contention that the circumstances of the instant case are not within the doctrine of Dunn v. Duessen, supra. We find nothing stated in the opinion in any of those cases which can be said to be contrary to the view that where ownership of the land at the time of such origin is shrouded in obscurity, and no proof can be adduced to show the intention of the owner allowing the use, the law raises a presumption that the requisite intention and acts disclosing it were present. In the instant case the evidence clearly shows an implied intention to appropriate the roadway to public use, whereas, in those cases, there was no evidence introduced going to show that the origin of the user or the intention of the original owner was unknown. For example, in the case of City of Houston v. Scanlan, supra, the city pleaded an express dedication, but failed to introduce any maps or plats or any other evidence showing such dedication. See the opinion of the Court of Civil Appeals in the same case, but styled San Jacinto Construction Co. et al. v. Scanlan et al., cited in 300 S.W. at page 220. The proof was that the Scanlans, the owners, built the concrete curb and the sidewalk on the land involved, and in doing so left a strip of land between the curb and the sidewalk. The city claimed that this strip was dedicated by the Scanlans for street purposes.

The Scanlans claimed that it was not so dedicated. The only testimony supporting the claim of dedication was that pedestrians used the sidewalk; that the parkway between the sidewalk and the curb was unobstructed. There was no evidence showing that it was generally or customarily used. The court, after reciting this evidence, as well as the evidence offered by the Scanlans, held: "We have concluded, after a careful consideration of the evidence adduced to support the City's claim of a dedication, that its probative force is so weak that it only raises a mere surmise or suspicion of the existence of a dedication and that there was not, in legal contemplation 'any evidence' thereof." [120 Texas 264, 375 S.W. 2d 720.]

Petitioners rely strongly upon the case of Worthington v. Wade et al., supra, [82 Texas 26, 17 S.W. 520], a negligence case, wherein it was held that the mere acquiescence of the owner of uninclosed land in the use by the public of a road over it is not sufficient evidence of a dedication. The case has no application here. The opinion indicates that the case was tried on the theory that the road involved was established as a public road by the Commissioners' Court, and that after such establishment the road was in continued use by the public. The court in holding that the road was not public, said:

"* * * All roads which have been laid out and established by authority of the commissioners' courts are public roads. Rev. St. art. 4359. A road not originally established under the statute may become public by long-continued use and adoption as such by the county commissioners with assent of the owner or by prescription. A road may also become public, in the sense that the public have the right to use it, by dedication. There is no direct evidence that the road in question was ever established as a public road by the commissioners' court of Hunt County. The fact, as testified to by one witness, that it was worked many years ago, tends to show that such may have been the case; but the other testimony in the case leaves no doubt that, if it ever had been recognized as a public road by the county court, the public authorities had abandoned it, and the owner's rights had again attached. The only evidence of dedication was the fact that it was for a long period of time in continued use by the public as a near way of reaching the county road, which ran west of the Roberts survey, in the direction of Greenville. No act of any owner was proved which tended to show an intention to dedicate it to the use of the public. In this state, the mere acquiesence of the owner of uninclosed land in the use by the public of a road over it is not sufficient evidence of a dedi-

cation. Ramthun v. Halfman, 58 Texas 551. See, also, Gilder v. City of Brenham, 67 Texas 345, 3 S.W. Rep. 309. We therefore conclude that the road was not public, and that the owner had the right to construct a fence across it."

The opinion does not refer to any pleadings or evidence, such as we have in the instant case, showing that the origin of the user by the public, and the ownership of the land at the time of such origin were shrouded in obscurity. To the contrary, the evidence shows the origin of the use, but that such use had been abandoned. The evidence was held insufficient to establish an express intention to dedicate the road to public use. The record does not reflect that under the circumstances no proof could have been adduced which would show the intention of the owner allowing the use. It should be noted that the cases of Ramthun v. Halfman and Gilder v. City of Brenham are cited in Worthington v. Wade et al., supra. In the Ramthun case it was alleged in the pleadings that one Wm. Frels, deceased, donated and dedicated to the public a certain parcel of land. Thus, it is seen that the origin of the user by the public, and the ownership of the land at the time of such origin was well known. Proof was adduced to show the intention of the owner, Wm. Frels. The facts were not such that would have raised a presumption that a dedication to public use was intended. A judgment in favor of the plaintiffs was reversed and the case was remanded to the trial court for a new trial for the reason that the court's charge improperly submitted the case to the jurry. The charge was so framed that it gave the jury no opportunity to uphold the contention supported by evidence that it was never the intention of Wm. Frels to dedicate the "lane" to public use, but that it was his intention to establish the lane as a private way for his own convenience, and that the use of it by the public was only permissive. There was evidence tending to show that if Frels at any time intended to donate the way to the public, that idea was abandoned before plaintiff, Halfman, acquired any special interest in the lane. The opinion indicates that if the issue between the parties had been properly submitted to the jury, a different result would have obtained.

The principal holding in the Gilder case was that the City of Brenham failed to introduce any evidence tending to show an acceptance of the dedication on the part of the city. This case can have no possible bearing on the issue involved in the instant case. In that case the court, after saying that acceptance of a dedication may be implied, and that such implication may arise from long-continued use by the public, went on to say:

"* * * In a state in which much of the land is vacant both in town and country, and every one feels at liberty to pass at will over any uninclosed premises, the presumption ought not to prevail that the proper authorities have adopted a street or road from the mere fact of its long use as such by the public." We can see no similarity between the questions involved in the two cases.

Petitioners also cite the case of Ladies Benevolent Society of Beaumont v. Magnolia Cemetery Company, Texas Com. App., 288 S.W. 813 (1926). In that case, one William McFaddin, the owner of a tract of 190 acres sold by deed 13 acres to the defendant, Magnolia Cemetery. By the same deed, he also conveyed to the defendant a roadway 30 feet wide. Later, McFaddin conveyed to the plaintiff a tract of 3 acres. This tract was also used as a cemetery. Plaintiff thereafter made the contention that the evidence showed that the part of the roadway lying immediately south of plaintiff's cemetery, and between the two cemeteries, had become a public roadway by dedication by William McFaddin. The court simply held in that situation "That prior to the time McFaddin made the deed to the defendant in 1887, he had done no act, so far as disclosed by the evidence, from which a dedication of the strip of land for use as a public road may be fairly implied." It further held that whatever rights were conveyed by the deed to the Magnolia Cemetery were conveyed to that corporation and not to the public. Nothing appeared in the deed or from the circumstances attending its execution from which an inference could be properly drawn that the parties to the deed had any intention of conferring a right upon the general public to use the roadway.

The remaining point presents the contention that the dedication issue was improperly submitted in that the issue should have restricted the jury to a finding that Gann and Upham, O'Connor's predecessors in title, dedicated the roadway. The further contention is made under this point that the issue was improper in that it was based on an improper definition of dedication. The point is overruled. It is argued under this point that *"intention* to dedicate" was the ultimate issue for jury determination, and that the trial court's definition of dedication allowed the jury to find a dedication solely on evidence of *consent* regardless of the *intention* of the owner. Petitioners failed to lodge an objection to the court's charge on this ground. Therefore, we do not decide the point, as the claimed error was not called to the attention of the trial court by proper objection. We come now to the judgment to be entered.

The judgments of both the trial court and the Court of Civil Appeals are reformed so·that the part of each judgment making perpetual the temporary injunction theretofore granted on the theory that respondent and the public had acquired a private or public easement by prescription is set aside, and only the part of each judgment holding the existence of a public roadway by dedication is affirmed. The petitioners are restrained from obstructing the dedicated roadway or interferring with the use of said roadway by the public, including the respondent, W. A. Gragg, so long as said road remains devoted or appropriated to a public use.

It is further ordered that the petitioners and the respondent each pay one half of all costs expended in this court.

Opinion delivered October 19, 1960.