**J. T. CONWAY et al., Appellants,**

v.

**T. W. IRICK et al., Appellees.**

**No. 16974.**

Court of Civil Appeals of Texas.

Fort Worth.

Dec. 20, 1968.

Rehearing Denied Jan. 17, 1969.

 

Lawrence R. Green, Dallas, and Ernest May, Fort Worth, of counsel, for appellants.

Gerald E. Stockard, Denton, for appellees.

## OPINION

MASSEY, Chief Justice.

At long last the subject matter of the dispute between the Conways, et al. and the Iricks, et al. was tried on the merits before a jury. The judgment based thereupon denied all the relief sought by the Conways on their suit, and in general gave the Iricks all the relief they sought by way of cross-action. The Conways appealed, and the substance of their points of error are in complaint of the declarations in and awards against them by the judgment of the court.

We reform and affirm.

Of interest are the cases in the books relative to the parties' disputes preliminary to the eventual trial on the merits with which we are presently concerned. These readily remembered are: Ex Parte Conway, 419 S.W.2d 827 (Tex.Sup., 1967), wherein some of the Conways, and Chester Oehler, their attorney, obtained writs of *habeas corpus* relieving them (on procedural grounds) of contempt orders entered by the trial court for disobedience of its order restraining them from entering upon the disputed tract of land, etc.; Conway v. Irick, 420 S.W.2d 141 (Fort Worth, Tex. Civ.App., 1967, ref., n.r.e.), wherein this court reversed (on procedural grounds in relation to supporting bond) an order granting temporary injunction enjoining the Conways from entering upon the disputed strip of land; Oehler v. Irick, 428 S.W.2d 882 (Fort Worth, Tex.Civ.App., 1968, ref., n.r.e.), wherein this court affirmed the trial court's order denying attorney Oehler's plea of privilege filed upon his being joined as cross-defendant in the suit; and Conway v. Irick, 429 S.W.2d 648 (Fort Worth, Tex.Civ.App., 1968, error refused) wherein we dismissed as moot (because a final trial was held and judgment rendered) the appeal sought to be taken by the Conways from the temporary injunction which enjoined them from obstructing or interfering with the use of the disputed tract pending a trial on the merits.

Mr. Oehler's former presence as a party to the Iricks' cross-action may and will be disregarded for purposes of the instant opinion. He was at one time the attorney for the Conways.

In order to visualize the area within which the tract of land in dispute is to be found we state the following: Long ago a single owner owned a sizeable tract of land. He conveyed the western one-half to predecessor in title of I. W. Conway, father of the Conways. The land is part of the I. W. Conway Estate, and the Conways are common owners. He conveyed the northern portion of the eastern one-half to Irick and/or predecessors and the southern portion of the eastern one-half to one Gray and/or predecessors. Averred by the Iricks was the presence on the tract of a road running from north to south, ending at what was indisputably a public road at the south, in part on what became the Conway tract and in part on what became the Irick and Gray tracts.

The events which occurred and gave rise to the litigation lay in the assertion

by the Conways that what was contended to be the right-of-way was not such, accompanied by their own and actions taken in their behalf to obstruct the same and so alter the surface that it could not be used as a roadway.

By the court's judgment the common boundary between the Conway tract and the Gray tract was found and stated by metes and bounds. Also found and stated by a metes and bounds description was that "there is a public road well defined upon the ground bounded on the west by an existing fence on the Plaintiffs' property astride the common boundary line * * * and that said road is fully set out and described as follows: (here follows a metes and bounds description)". Also found was the fact that the road was dedicated to the public as a public road by the owners of the surrounding lands prior to the purchase of such lands by I. W. Conway in 1943; that the public accepted the dedication and that the county employees worked and maintained the road with the knowledge of I. W. Conway and his predecessors in title and the plaintiffs ever since that time; and that subsequent to his purchase in 1943 I. W. Conway, himself, dedicated the same as a public road and that such occurred more than ten (10) years prior to the acts complained of on the part of the Conways in January or February, 1967, accompanied by a use by the public generally in traveling the same with the knowledge of the heirs of I. W. Conway and those under whom they claim without objection; that the Conway heirs and their predecessors, on and prior to the times of the events of January and/or February, 1967 knew that the public and the Iricks, etc., were claiming the right to use said road and that they and the county employees made improvements thereon, accompanied by continuous uninterrupted use for the requisite periods, and that they are estopped to presently deny that it is a public road; that Irick, Gray, et al., as abutting property owners have a permanent right to use the same as a public road and

private easement and that such easement "is permanent and perpetual"; that as of the time of the sale by the common predecessor in title to all the tracts there existed a well defined road and way of travel in the same location, and that the same was impliedly reserved at the time of the sale of said land, and that the same was a way of necessity and has continued so to be as a permanent well defined road and way of travel at the same location, continuously and until the events of January and/or February, 1967, and that the road was and is reasonably necessary to the use and enjoyment of the Irick tract and the Iricks have a permanent, perpetual easement to the full width and length of the road as a way of necessity, together with the free and uninterrupted and unobstructed use thereof, etc.

The court's judgment then found that the Conways had obstructed and interfered with the use of the road and were threatening to again do so unless enjoined, and that they should be and were restrained and enjoined therefrom, there being no adequate remedy at law, and a permanent injunction in said respect was ordered and decreed. The court further found, as result of past acts in connection with the obstruction of the roadway that the Iricks were actually damaged in the sum of $1,200.00, because of the acts of J. B. Conway and J. T. Conway and that the acts accomplishing such were done wilfully and maliciously with the intent to injure the Iricks, and wantonly and maliciously, and with gross negligence, and that in addition to said sum of $1,200.00 in actual damages the Iricks were entitled to recover from the named Conways and were awarded the additional sum of $2,500.00 as exemplary and punitive damages. In addition, costs were decreed to be paid by all the Conways.

Contrary to the contention of the Conways we are of the opinion that evidence to be found in the record raised factual issues for the jury on the matters of

prescriptive easement and dedication. See generally the common law methods of the establishment of rights-of-way in 28 Tex. Jur.2d, p. 43, et seq., "Highways and Streets", Secs. 6 to 21, inclusive. We do find, however, that the judgment cannot be supported on the theory of prescriptive easement in view of the conflicting findings upon the question of whether Iricks' use of the road was adverse and hostile, the conflict being nearly identical to that discussed in Pearson v. Doherty, 143 Tex. 64, 183 S.W.2d 453 (1944).

However, should we err in our belief that the evidence and findings of the jury do support the judgment in its entirety on the theory of dedication, the judgment which awards to the Iricks the right to use the road as a "way of necessity" would nevertheless be affirmed. In such event the terms and provisions of the injunction would necessarily be altered. That there be necessity therefor does not trouble us, however, in view of our belief that the judgment finds support under the dedication theory.

The Conways contend that the record should compel the holding that no more than a way of necessity is reflected thereby. They claim to be illogical the jury's findings both that prior to the purchase by I. W. Conway, their father, that "the road in question was dedicated as a public road, by the owners of surrounding lands", and the further finding that there was such dedication subsequent to the purchase of the Conway tract by I. W. Conway. We do not agree. The findings are not necessarily inconsistent. Both may stand. Either finding would support the judgment if the evidence was sufficient, as we hold. That in many instances evidence establishing dedication would be more certain and positive than was possible in the instant case is not to be doubted, but a jury is entitled to infer an intent to dedicate from long-continued public use and the owner's apparent acquiescence. Such was proved in this case. 28 Tex.Jur.2d,

p. 48, "Highways and Streets", Sec. 8, "(Dedication)—In general; Intent." Also, the same situation would create an estoppel against a contrary claim by such an owner. We see no useful purpose in reviewing the voluminous record to justify our conclusion that the evidence supports the judgment. On the matter of propriety of holding rights-of-way to have become public roads by dedication at common law see O'Connor v. Gragg, 161 Tex. 273, 339 S. W.2d 878 (1960); Owens v. Hockett, 151 Tex. 503, 251 S.W.2d 957 (1952); and Dunn v. Deussen, 268 S.W.2d 266 (Fort Worth, Tex.Civ.App., 1954, ref., n.r.e.).

Following the guide of the Supreme Court in O'Connor v. Gragg, supra, and since we believe that the judgment finds support on the theory of dedication and not on the theory of prescription, we believe that the injunctive period of the trial court's judgment and writ thereunder should be so reformed as to restrain the Conways, et al. from interfering with the use of the subject road by the public, including the Iricks, so long as said road remains devoted or appropriated to a public use and/or as a way of necessity by the owner of land served by its use.

Special Issue No. 50 read: "What amount of money, if any, if paid now in cash, do you find from a preponderance of the evidence, if any, would reasonably and fairly compensate T. W. Irick and wife, Lenora Irick, for the injuries, if any, sustained by them at the times, places and on the occasions in question inquired about in the foregoing issues?" In answer thereto the jury returned as its answer the sum of $1,200.00.

The Conways' attorney for purposes of the appeal advanced the contention that there was no evidence upon the matter of compensatory damages to support the finding of the jury in answer to the issue. There was an absence of, or insufficiency in, the evidence to the extent of $200.00 upon the matter of those compensatory damages upon which the Iricks had de-

clared by their pleadings, and because of which they had prayed for compensatory damages in the sum of $1,200.00. However, there was evidence of actual damages over and above $1,000.00 sufficient to support the answer returned if the state of the pleadings could be disregarded. There having been no predicate laid for complaint on appeal in the Conways' motion for new trial because of the state of the pleadings, i. e., because the evidence which would go to support as much as the $1,200.00 in damages found in answer to the special issue was not predicated upon allegations to be found in the pleadings, we consider ourselves bound to treat the matter as either supported thereby or as an issue tried by consent without necessity of amendment of pleadings. Therefore the answer to the special issue was supported by the evidence and was not against the great weight and preponderance of the evidence.

On the matter of the boundary adjudication, by metes and bounds description in the judgment, the Conways complain that the court was without authority to make declaration concerning the same. They claim that relief in said respect was sought in their behalf only, and as against Gray, and that since Gray was dismissed as party defendant to their suit prior to time of the submission of the case to the jury any adjudication of boundary was improper. In this respect it is to be observed from the record that it was the evident and declared theory of the Conways that the east boundary line of their property (abutting upon Gray) was a straight line. Their contention was that the most northerly point of the line should be found and declared to be to the east of a point where there was a point apparent as a joint corner of the Irick and Gray properties, at the west sides thereof,—and that the most southerly point of the line should be found and declared to be to the east of a point apparent and claimed through a corner established on the ground by Gray after August 19, 1966. Though Gray was dismissed as a party defendant these two theories

were submitted to the jury by way of special issues without any objection on the part of the Conways. The jury found against both theories.

It was by reference to the description of the boundary in the judgment that the court defined the metes and bounds description of the road. The road therein described began at the south with the west side thereof taking 27 feet off the Conways' property and (by a straight line) taking 28 feet off the Conways' property at the north end; thence east so that 3 feet was taken off the Gray property the full length of the road's eastern side.

■ In a review of the whole of the evidence having relation to the matter of the extent and size of the tract of land belonging to the Conways, and to the eastern boundary location thereof, we have become convinced that the adjudication as to the location of the eastern boundary at the Conway tract was as liberal in their behalf as the credible evidence bearing thereupon would permit. In other words we are stating that while there was evidence in the record which would have served as a predicate for adjudication of the boundary to be further west (with corresponding diminishment of their land), the Conways were left with the maximum reversionary interest possible under the record, if and in the event the road should ever cease as to public use or as a way of necessity to provide access to the Irick tract.

■ Though Gray was dismissed as defendant prior to the submission of the case, he remained as a cross-plaintiff and a part of his prayer for relief was construable as requesting the declaration of the boundary line between the properties. Indeed, the declaration in the judgment was in accord. No point of error is predicated upon Gray having been dismissed as a party defendant. Under these circumstances the particular points of error presented upon the matter of the trial court's definition of the boundary in the judgment and the destruction of the Conways' bound-

ary claim by dismissal of their case against Gray does not present reversible error and are for that reason overruled.

By two methods the Conways complain relative to the costs as they appear on the Cost Bill in the transcript. They have presented a Motion to Correct Transcript and complain of "extravagant assessment of costs" by a point of error. At an early point of this opinion we noted: Ex Parte Conway, 419 S.W.2d 827 (Tex.Sup., 1967), and Conway v. Irick, 420 S.W.2d 141 by this court in 1967. Under such cases some of the costs which appear on the face of the "record of costs" in the office of the clerk of the trial court would not be chargeable to the Conways and/or Oehler, because any such charge against them, otherwise proper, would be annulled through action of the Supreme Court in the contempt matter and through action of this court reversing an order granting temporary injunction. The "record of costs" as of the time of the earlier appeal, etc., and as carried forward on up through time of the present appeal, was on one balance sheet under a single numbered and styled cause on the docket of the trial court.

We will not attempt to deal with the costs to the extent of considering credits against same because of payments made by or in behalf of the Conways or others. However, as best we may determine from the showing made under the motion and point of error the items shown thereon as Clerk's Charges from February 28, 1967 to and inclusive of April 7, 1967 in the amount of $142.35 would not be a part of the costs presently taxable against the Conways. Likewise a charge of $490.75 for the Statement of Facts involved in the former appeal to this court on the matter of the temporary injunction would not be a proper part of the costs thus taxable for it had already been taxed against the opposite parties. The total of the two items is $633.10, and this is the maximum amount of the error made apparent by the showing on appeal. Being merely a clerical error

in respect of costs according to the Cost Bill in the transcript the trial court's power of correction continues should such action become necessary because of the parties' inability to come to agreement with the District Clerk.

We recognize that the trial court did not intend that the judgment be construed to tax against the appellants herein any part of the costs which became properly taxable against the appellees because of adjudications by appellate courts upon matters which became involved and appealable before trial on the merits was finally held. Neither do we thus construe the judgment.

Judgment is reformed so as to make the period of the injunction therein granted apply "so long as said road remains devoted or appropriated to a public use and/or as a way of necessity by the owner of land served by its use as a right-of-way." As so reformed the judgment is affirmed. All costs of the appeal are adjudged against the appellants.