In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00116-CR
______________________________

WALTER WAYNE MILLS, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee

                                              

On Appeal from the 71st Judicial District Court
Harrison County, Texas
Trial Court No. 04-0244X

                                                 

Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

            After a careful review of the entire appellate record, Walter Wayne Mills' counsel on appeal
submitted a brief to this Court in which counsel concluded there are no arguable issues that would
require reversal of the trial court's judgment. See Anders v. California, 386 U.S. 738 (1967). As also
required by Anders, counsel filed a motion to withdraw from the appeal, sent Mills a copy of the
brief and the appellate record, and informed Mills of his right to file a responsive brief pro se. Mills
submitted a response November 28, 2005. After conducting our own independent review of the
record before us, we concur with counsel's assessment, and for the reasons set forth briefly below,
we affirm the trial court's judgment.
            Mills pled guilty to the offense of aggravated robbery. See Tex. Pen. Code Ann. § 29.03
(Vernon 2003).

 Mills elected to have the jury assess punishment. The record in this case shows the
trial court's admonishments to Mills concerning his guilty plea complied substantially with Tex.
Code Crim. Proc. Ann. art. 26.13 (Vernon Supp. 2005).

 The record also reflects that Mills' waiver
of rights and plea of "guilty" were made willingly, knowingly, and voluntarily. Thus, Mills' plea is
factually and legally sufficient to support the trial court's entry of a finding of guilt. See Ex parte
Williams, 703 S.W.2d 674, 678 (Tex. Crim. App. 1986) (in felony cases where defendant pleads
guilty before jury, "there is no question of the sufficiency of the evidence on appeal . . . or on
collateral attack"). Our review of voir dire, as well as the parties' opening and closing arguments,
also reveals nothing to suggest that reversible error occurred during those portions of the proceedings
below. 
            Likewise, our review of the jury charge reveals no anomalies requiring reversal. The record
suggests—although it is not exactly clear—that Mills' trial counsel had requested the trial court to
list some of the conditions of community supervision that could be imposed by the trial court, should
the jury recommend a probated sentence. The record also might be read to suggest counsel wanted
the trial court to issue some instruction regarding alcohol and drug abuse that counsel thought should
be considered by the jury as a factor mitigating punishment. Neither request, however, was
submitted in writing, nor was either requested charge specifically dictated into the record, as required
by law. See Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon Supp. 2005). Accordingly, any issues
regarding Mills' generalized charge requests were not preserved for review by this Court. Moreover,
we note that a trial court is not required to submit a list of potential conditions of community
supervision in its charge. Cagle v. State, 23 S.W.3d 590, 594–95 (Tex. App.—Fort Worth 2000, pet.
ref'd) (citing Yarbrough v. State, 742 S.W.2d 62, 64 (Tex. App.—Dallas 1987), pet. dism'd,
improvidently granted, 779 S.W.2d 844, 845 (Tex. Crim. App. 1989)). And it is possible that any
directive to the jury for it to specifically consider alcohol and drug abuse to be a mitigating factor
might be seen as an improper comment on the weight of the evidence. See Tex. Code Crim. Proc.
Ann. art. 36.14.
            The jury in this case assessed Mills' punishment at fifteen years' imprisonment. This is
within the range provided for by Texas law. See Tex. Pen. Code Ann. § 12.32 (a) (Vernon 2003). 
            Finally, we note that, during the State's direct examination of the victim, the State was able
to assist the victim by volunteering the name of the daytime talk show hosted by Barbara Walters,
"The View." While the State's comment might have drawn an objection from opposing counsel
regarding allowing counsel to testify, our review of the record leads us to the conclusion that the
State's comment had no impact on the jury's verdict; further, we do not believe Mills' trial counsel
offered ineffective assistance for failing to object to this slight degree of assistance by the State.
            For the reasons stated, we affirm the trial court's judgment.
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          December 28, 2005
Date Decided:             January 13, 2006

Do Not Publish

ather had given Bishop permission to use the lane. Rogers also stated that Ruby
Rigsby purchased thirty acres abutting the west side of his land in 1979. Rogers also stated that "the
lane has never been used by a law enforcement, fire or ambulance vehicle. No school bus or U.S.
Postal Service vehicle has ever traveled on the Rogers' lane. No county maintenance equipment or
county employees have ever been present on the lane nor done any repairs, maintenance or work of
any kind on the lane." 

 The neighbors filed a very thorough motion with various complaints about Rogers' affidavit,
styled as special exceptions to a number of the paragraphs in his affidavit. In five pages, and fifteen
numbered paragraphs of complaint about a two-page affidavit, the neighbors essentially complain that
Rogers did not show how he had personal knowledge of the matters asserted and that his statements
were thus hearsay and inadmissible. (4) The neighbors also complain that Rogers' affidavit about Rigsby
contradicts her affidavit. (5) Nevertheless, the trial court granted the "special exceptions" to Rogers'
summary judgment evidence without comment. Both parties have ignored that order in briefing this
appeal.

 We first examine some types of evidence used in this type of case. Although county
maintenance of a road has not been dispositive, a number of cases have found dedication in cases in
which county maintenance had been shown. See, e.g., Lindner, 691 S.W.2d at 591-92. Similarly,
cases that found an implied dedication also cited proof that a road had been used for school bus travel
or a mail route. See Las Vegas Pecan & Cattle Co., 682 S.W.2d at 257. Similarly, although as
discussed above, the required continuous use can be by a very limited clientele--courts finding
dedications have also looked to the scope of public use, such as by tourists, fishermen, or fish camp
renters, or examined whether the road use was essential in some way. See Gutierrez, 951 S.W.2d at
838-42. 

 In our case of Reed, the evidence showed that the road at issue was necessary in order to
access another road--which had previously been declared a public road--on an adjoining tract. 
Without the use of Cherry Lane, the Goff road would have been unreachable. Cherry Lane also
appeared on a plat from 1951, and there was testimony that long-time neighbors had used the road 
twice a day since the 1950s and that a neighboring nursery and its customers used the road to access
parts of the nursery.

 Similarly, in Betts, this Court reviewed evidence a road had been used by the public since the
1920s, had been fenced on both sides, and had been (for some years, but ending in the 1950s or
1960s) maintained by the county. We found the evidence sufficient to support a verdict in that case. 
Betts, 165 S.W.3d at 869-70. The evidence in this case is different.

 Further, the question is whether the necessary elements have been proven as a matter of law. 
This case has several factual distinctions from either Betts or Reed. 

 One problem we see with the evidence supporting the summary judgment is that it fails to
establish continuous use before 1963. To be sufficient to support the summary judgment, the
evidence must conclusively prove the "road" had been in continuous use by the public. This evidence
does not conclusively show that. It shows use, at unspecified times during a considerable span of
years, much of which was by individuals who had the right to do so because their parents owned the
property. These affidavits do not conclusively establish that any use that occurred was continuous.

 Another problem we identify in the affidavits relates to the use by the public. While the
affidavits do say the affiants never asked for permission to cross the land, they are executed by
children of prior landowners. Since their parents owned the land at the time, it would seem unlikely 
they would be required to ask for permission to use the "road." They do not conclusively establish
that the use was by the public rather than by the landowner's family. True, each affidavit states the
affiant had always "understood it to be a public road." Although "understanding" that the location
was a public road is some evidence, it is not conclusive.

 The affidavits also state that the descendants of former owners, ages eighty-eight, sixty-three,
and seventy-eight, recalled the public using the road when they were children. While that is evidence
of public use, it says nothing about the continuity of that use.

 Finally, there is no evidence fixing the actual physical location of "the road." Because the
pleadings do not describe the road location, the affidavits--which reference merely "the road that is
the subject of this lawsuit"--do not fix that location. It is impossible to ascertain from this record
whether the road in question is even the same location described by the various affidavits, or, for that
matter, whether they are separately speaking of the same location. One might assume that at least the
affidavits from relatives speak of the same location, but the evidence does not affirmatively show this
to be the case.

 At most, the affidavits indicate that, at some vague points in time while certain mature adults
were children and lived on the property, they used the road and understood it to be a public road. (6) 
Proof was not conclusive.

 We reverse the summary judgment and remand this case to the trial court for further
proceedings.

(2) The Damage Claims Against the County Were Properly Dismissed, While the Declaratory
Judgment Claims Should Not Have Been Dismissed

 Rogers also contends the trial court erred by granting the County's motion to dismiss, which
was done based on sovereign immunity. Rogers claims the County was not immune to his claim
because his claim against the County was for a declaration of rights, not for damages.

 A county is a governmental unit protected by the doctrine of sovereign immunity. (7) Travis
County v. Pelzel & Assocs., 77 S.W.3d 246, 248 (Tex. 2002). The propriety of the County's dismissal
in this case hinges on the extent to which the lawsuit sought damages from the County. The argument
is that, because damages were sought, Rogers had to allege an exception to immunity that would
allow a recovery from the County. If Rogers did not seek damages, then no exception was necessary. 
A declaratory judgment may be sought from a governmental entity, so long as such claim is not a
subterfuge for obtaining a damage award from the entity.

 We recognize that courts have held that certain declaratory judgment actions do not implicate
the doctrines of sovereign or governmental immunity. See, e.g., Tex. Educ. Agency v. Leeper, 893
S.W.2d 432, 446 (Tex. 1994); City of Dallas v. Martin, 214 S.W.3d 638, 644 (Tex. App.--Dallas
2006, pet. filed) (no governmental immunity in suits to construe legislation). Texas courts distinguish
suits to determine a party's right against a governmental unit from suits seeking damages. See City
of Houston v. Houston Firefighters' Relief & Retirement Fund, 196 S.W.3d 271, 277 (Tex.
App.--Houston [1st Dist.] 2006, no pet.). A declaratory judgment action against the government
seeking a declaration of a party's rights and status under a statute is not barred by governmental
immunity. See Tex. Natural Res. Conservation Comm'n v. IT-Davy, 74 S.W.3d 849, 860 (Tex. 2002);
Bell v. City of Grand Prairie, 221 S.W.3d 317, 323 (Tex. App.--Dallas 2007, no pet.). A party can
maintain a suit to declare rights without obtaining legislative permission. See Houston Firefighters'
Relief & Retirement Fund, 196 S.W.3d at 277.

 But, governmental immunity bars suits for declaratory judgment that seek a declaration of the
government's liability for money damages. See IT-Davy, 74 S.W.3d at 859-60; Bell, 221 S.W.3d at
324. A party cannot circumvent the doctrine of governmental immunity by characterizing a suit for
money damages, such as a contract dispute, as a declaratory judgment action. See IT-Davy, 74
S.W.3d at 856; Martin, 214 S.W.3d at 644; Houston Firefighters' Relief & Retirement Fund, 196
S.W.3d at 277; City of Seagoville v. Lytle, 227 S.W.3d 401, 410 (Tex. App.--Dallas 2007, no pet.).

 Rogers directs us to Oake v. Collin County, 692 S.W.2d 454 (Tex. 1985), as authority that one
can bring a declaratory judgment action against a county in connection with a land dispute. We agree. 
Oake stands for the proposition that sovereign immunity is not a blanket protection for a
governmental entity for actions that truly seek a declaration of rights.

 The County argues that, because the neighbors' action was for ownership and control of the
roadway, it sought the transfer of something of value and thus was a suit for damages. (8) We disagree. 
A suit to declare ownership changes nothing, transfers nothing, causes no result that might be
considered an award of damages. The requested declaratory judgment would not change ownership
or rights; it would only recognize rights that already exist. Thus, that aspect of the County's argument
necessarily fails. See Wood v. Walker, No. 07-05-00392-CV, 2007 Tex. App. LEXIS 2370 (Tex.
App.--Amarillo Mar. 27, 2007, no pet.) (declaratory judgment appropriate remedy in suit involving
existence of county road). (9)

 That conclusion does not entirely doom the County's dismissal. In this case, the pleadings
show that Rogers sought not only declaratory relief, but also damages. Rogers alleged an injury and
sought an award of damages from all parties, including the County.

 If the only real goal of a declaratory judgment action is to gain a money judgment, the suit
must be dismissed. City of Houston v. Williams, 216 S.W.3d 827, 828-29 (Tex. 2007). To the extent
an action seeks damages against a governmental entity for which immunity has not been waived, a
dismissal is required for want of jurisdiction; but to the extent an action truly seeks a declaration of
rights, that action may be maintained against the entity. Lowell v. City of Baytown, No. 01-04-00548-CV, 2007 Tex. App. LEXIS 6292 (Tex. App.--Houston [1st Dist.] Aug. 9, 2007, no pet.); see Bell,
221 S.W.3d at 325 (to extent claimant does not seek money damages, declaratory judgment action
and injunction not barred by governmental immunity). This action included both types of claim.

 The trial court thus did not err by dismissing Rogers' claim against the County for money
damages, but did err in dismissing the declaratory judgment claims.

 We reverse the summary judgment, reverse the dismissal of the County as to the declaratory
judgment action, and remand those portions of the case to the trial court for further proceedings. We
affirm the judgment dismissing from the suit the damage claims against the County.

 Josh R. Morriss, III

 Chief Justice

Date Submitted: October 31, 2007

Date Decided: January 18, 2008

OPINION ON REHEARING

 By their motion for rehearing, Jasper Stover, W. T. Barber, Ruby Rigsby, and John Addington
ask us to affirm the trial court's summary judgment in their favor and against the damage claims by
Rod Rogers and Mary E. Rogers, Trustees of the Crawford M. Rogers and Mary E. Rogers Revocable
Living Trust (referred to collectively as Rogers unless stated otherwise) premised on alleged
intentional torts. In our original opinion, we did not address those claims because that aspect of the
summary judgment was not appealed. Because those issues were not considered in our original
opinion, our opinion's language may have confused the parties about what our opinion did to those
other claims. This supplemental opinion is intended to dispel any confusion.

 We may reverse a judgment based only on claimed errors raised on appeal. We are restricted
to addressing the arguments actually raised, not those that might have been raised. Garcia v.
Robinson, 817 S.W.2d 59 (Tex. 1991). We, therefore, did not address matters outside those claimed
errors. Unchallenged rulings are not before this Court for review. See generally Lowe v. Townview
Watersong, L.L.C., 155 S.W.3d 445, 447 n.1 (Tex. App.--Dallas 2004, no pet.).

 Because Rogers has not challenged on appeal the summary judgment rendered against his tort
claims, the summary judgment rendered on all of those claims thus became final in the trial court. 
See Garcia v. Nat'l Eligibility Express, Inc., 4 S.W.3d 887, 889 (Tex. App.--Houston [1st Dist.]
1999, no pet.). And that is true, a fortiori, both as to the trespass and slander of title claims which
seem to have been affirmatively abandoned and the civil conspiracy claims which seem not to have
been affirmatively abandoned. The effect is the same. Claims decided in a summary judgment, not
appealed, became final.

 Stover, Barber, Rigsby, and Addington also ask that we sever from the remainder of suit any
claims against Addington. But, by our reading, the summary judgment disposed of all pending claims
against Addington. Since they were not appealed, and thus became final, there is nothing left to sever
from the claims which remain pending.

 Finally, Stover, Barber, Rigsby, and Addington ask that we change the way we have taxed the
costs on appeal. Since this opinion on rehearing is intended merely to clarify our earlier opinion, we
do not conclude there is any justification for any adjustments in the way we have taxed the costs in
this matter.

 Josh R. Morriss, III

 Chief Justice

Date: April 23, 2008
1. In one suit, Stover, Barber, and Rigsby sought judgment that they had the right to use a road
across Rogers' property, arguing it was a public road. In the other suit, Rogers alleged the Stover
parties engaged in a conspiracy to unlawfully acquire his property and slander his title. Rogers' suit
also joined Bowie County, alleging it had waived governmental immunity by claiming ownership
of his land and by conspiring with the other individual defendants to lawfully obtain his land. 
Rogers sought a declaration of rights under the Declaratory Judgments Act and an injunction barring
defendants from trespassing. Rogers also sought damages between $10,000.00 and $100,000.00
from all defendants for trespass.
2. "Since, by a dedication, valuable rights in land pass from the owner, no presumption of an
intent to dedicate arises, unless it is clearly shown by his acts and declarations, or by a line of
conduct, the only reasonable explanation of which is that a dedication was intended." Int'l & G.N.R.
Co. v. Cuneo, 108 S.W. 714, 715 (Tex. Civ. App. 1908).
3. O'Connor v. Gragg, 161 Tex. 273, 339 S.W.2d 878, 882 (1960); see Betts v. Reed, 165
S.W.3d 862, 866 (Tex. App.--Texarkana 2005, no pet.).
4. The neighbors also complained Rogers had misstated a matter set out in a deposition--that
Matthews had stated he had not understood the road to be a county road. Even the quoted section
of the affidavit provided by Stover shows the opposite. Rogers' affidavit precisely sets out exactly
what Matthews did say. 
5. That is permissible, and generally is the purpose of dueling affidavits.
6. We note, too, that no evidence supporting the summary judgment shows the condition of
the "road." The affidavits simply referred to it as a "road" with no further explanation. Rogers'
responsive affidavit describes the "road" as a virtually impassable rut or trail. That may raise a
question about whether a road was involved at all, or merely a trail passable by horses or children
afoot. That state of the proof could also influence the fact issue of "continuous" use before 1963. 
The 1963 condition of the "road" could provide some proof of its use, or lack of use, before that date. 
Since the affidavits do not show the condition of the "road" before 1963, Rogers' affidavit provides
the only evidence of its condition, that it was virtually impassable.
7. Generally, a governmental unit possesses both immunity from liability and immunity from
suit. Pelzel & Assocs., 77 S.W.3d at 248; Catalina Dev., Inc. v. County of El Paso, 121 S.W.3d 704,
705 (Tex. 2003). Governmental immunity has two components: immunity from liability, which bars
enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit
against the entity altogether. Tooke v. City of Mexia, 197 S.W.3d 325, 332 (Tex. 2006). No
argument suggests that the County would be immune from this suit, instead of just immune from
liability.
8. There is authority holding that, where the relief sought is declaratory but would require the
transfer of value, the relief is not declaratory in nature. See Sante Rehab, L.P. v. Nat'l Heritage Ins.
Co., No. 03-03-00738-CV, 2004 Tex. App. LEXIS 7174 (Tex. App.--Austin Aug. 12, 2004, pet.
denied) (mem. op.). That case, however, sought to order an agency to take an action which would
require transfer of money. 
9. A trial court has discretion to award reasonable and necessary attorney's fees as are equitable
and just in suits filed under the Declaratory Judgments Act. Tex. Civ. Prac. & Rem. Code Ann.
 37.009 (Vernon 1997). A trial court's discretion in deciding whether to award attorney's fees in
a declaratory judgment action is broadly construed and will not be reversed absent a clear abuse of
discretion. Oake, 692 S.W.2d at 455; Wood, 2007 Tex. App. LEXIS 2370.